316

(No. 96-CC-0591—)

THOMAS REED, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed July 6, 1999.*

THOMAS REED, *pro se.*

JIM E. RYAN, Attorney General (MICHAEL A. WULF, Assistant Attorney General, of counsel), for Respondent.

## ORDER

PATCHETT, J.

The Claimant is a former inmate with the Illinois Department of Corrections. He seeks damages in the sum of $100,000 for personal injuries allegedly received as a result of negligence by an agent of the Respondent, Department of Corrections for the State of Illinois. The claim alleges that on May 26, 1994, while employed at the warehouse at the Big Muddy Correctional Center, Mr. Reed was engaged in taking inventory at the direction of Correctional Officer Larry Falaster. He claims that a freezer door had been propped open by order of the supervisor and ice was building on the floor and walls of the

freezer. He further claimed that while attempting to move a skid of meat with a hand jack, he slipped and fell allegedly injuring his back and left elbow.

The hearing on this claim was held before a commissioner of this Court. At the hearing, Claimant testified in accordance with the allegations made in the claim. He further contended that he was a tree trimmer by trade and could no longer climb trees as a result of his injury.

After the injury in question, Mr. Reed was taken to the medical unit at the institution. He was given physical therapy and some other non-specified treatment. He was taken to Benton, Illinois three times a week for physical rehabilitation and continued with that for a couple of months. Mr. Reed was never operated upon and was hospitalized only at the institution. He has not consulted a private physician since his release from the Department of Corrections and had not been taking medication or treatment at the time of the hearing.

Mr. Reed was familiar with the warehouse meat locker at the time of the accident and was wearing institutional boots when it occurred. He did not break any bones as a result of the fall. He described that he has a pain in his back that is severe at night, numbness in the arms and tingling as a result of the accident. He further testified his legs go to sleep a lot. On cross-examination, Mr. Reed testified he did slip and fall in the shower at the county jail in January of 1993, but testified that it was not a serious injury. That fall resulted in some back pain also. He further admitted he was in and out of the freezer in question on a daily basis. He was unaware of any special shoes being issued to any workers in the unit. Mr. Reed denied ever being told not to attempt to move heavy objects by himself and testified that his supervisors merely expected the job to get done. He further did not recall

being told to prop the freezer door open, and contended he was not the one who in fact propped it open. He further denied he had been told not to rush or hurry in doing his job. After the injury in question, he did not return to work in the warehouse. At the conclusion of the Claimant's testimony, the Respondent sought and received permission to supplement the record with an evidence deposition taken of a Hal Gordon, physician at the Big Muddy Correctional Center. The Court has reviewed that evidence deposition. It merely further confirms a prior fall by the Claimant at the county jail and reports of back pain prior to this injury.

The Respondent called Larry Falaster, the civilian supervisor of the warehouse. Falaster testified that they were not wasting time but there was no rush in terms of getting the inventory in question completed. He further testified he worked seven and one-half hours of overtime on the day in question.

Mr. Falaster stated that he had repeatedly warned the correctional resident workers not to try to do anything dangerous and to not move anything without help. He further repeatedly told them not to hurry. He also testified he had repeatedly told inmate workers to close the freezer door immediately upon entering and exiting that door.

The Respondent then called Randy Lowes, a civilian supervisor at the warehouse, who worked for Mr. Falaster. On the day in question, he learned about the Claimant's fall in the freezer from another inmate. He went into the freezer and found Mr. Reed lying on his back. He called the health care unit. He testified that this was not a situation where the door of the freezer was propped open. He testified unequivocally that on the day in question the door was closed.

In rebuttal, Mr. Reed testified that at the time of the accident, the door was propped open and that Lowes was standing right outside the door looking in at Mr. Reed. He further testified that Lowes cautioned the health care workers to be careful when stepping into the freezer because of the buildup of frost from the door being propped open. Mr. Reed also said that a nurse who was picking him up on the stretcher nearly fell because the floor was slick.

To prevail on a claim of negligence, Mr. Reed must prove by a preponderance of the evidence that the State had a duty to protect him from harm, that the State negligently breached that duty, and that such negligence was a proximate cause of the injury. (*Starks v. State* (1992), 45 Ill. Ct. Cl. 285, 290; *Thomas v. State* (1995), 48 Ill. Ct. Cl. 165, 167.) An inmate of the penal institution is not ordinarily free to refuse to perform tasks assigned to him even if he considers the working conditions unsafe. An inmate does not have the liberty of choice available to a person in private industry and must therefore work under conditions that are assigned to him. *Rickets v. State* (1995), 48 Ill. Ct. Cl. 142, 145.

There are some troubling inconsistencies in the testimony of the Respondents in this case. Mr. Falaster testified that there was no urgency to complete the inventory, but he worked seven and one-half hours of overtime on the day in question. Mr. Lowes testified that after observing Mr. Reed on the floor and before the health care workers arrived at the scene, he closed the door on Mr. Reed. He also assured the Commissioner of this Court that he gave no warning to health unit personnel who arrived on the scene despite Mr. Reed's fall. Both supervisors, Falaster and Lowes were very firm in their instructions to always close the door to the locker. It would be reasonable to assume that this was done because leaving the door open would cause unwanted slick conditions.

The Court observed the manner and demeanor of Mr. Reed while testifying and formed a favorable impression as to his credibility. Based on all the facts and testimony before us, we find that on the day in question the floor of the meat locker became slippery and hazardous. We further find that the likelihood of this happening was known to the civilian supervisors of Mr. Reed. We further find that as a result of the hazardous nature of the endeavors in which Mr. Reed was engaged and the conditions of the workplace, Mr. Reed was in fact injured by the negligence of agents of the Respondent. We further find that negligence was a proximate cause of his injury. There is little or no evidence of comparative fault on the part of Mr. Reed. There is evidence of a prior back injury and prior complaints. However, evidence as to damages in general is very sparse. Based on these findings, we award the Claimant the sum of $5,000.